1

2

3

4

5

6

7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    LANCE WILLIAMS,                              No. 2:15-cv-1228-CMK-P

12               Plaintiff,

13          vs.                                       <u>ORDER</u>

14    M.L. MARTINEZ, et al.,

15               Defendants.

16    _____/

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42

18    U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1), and a motion for

19    appointment of counsel (Doc. 6).

20          The court is required to screen complaints brought by prisoners seeking relief

21    against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C.

22    § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

23    malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

24    from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

25    the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

26    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

1

This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges he is being harassed by two correctional officers, Martinez and Winsaver.  He alleges defendants Martinez and Winsaver began harassing him when he was transferred to building 2 on or around March 10, 2015.  Plaintiff sets forth eight claims in his complaint, mainly alleging harassment.  In his first claim, plaintiff alleges defendants Martinez and Winsaver would not allow plaintiff out of his cell, making him miss work and law library time.  In his second claim, plaintiff alleges defendant Martinez refused to allow him use of the phone to call his lawyer, and issued him a 128 disciplinary in retaliation.  In his third claim, plaintiff alleges defendants Martinez and Winsaver refused to accept his legal mail and have refused to respond to his 602 inmate grievances.  In claim four, plaintiff alleges defendants Martinez and Winsaver tried to incite a violent attack against plaintiff by the other inmates.  In count five, plaintiff again alleges defendants Martinez and Winsaver refused to let plaintiff out of his cell to go to the law library and refused to respond to his 602 inmate grievance.  In his sixth claim, plaintiff alleges defendant Martinez refused to allow him outside to exercise.  In claim seven, plaintiff alleges defendants Martinez and Winsaver refused to bring him food trays, for what appears to be two separate meals, when he was unable to walk to food area.  Finally, in his eighth claim, plaintiff alleges defendant Martinez harassed him by making fun of his injury.

/ / /

## II.  DISCUSSION

Plaintiff's complaint suffers from a number of defects.  First to state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff has named two individuals, Walker and Arnold, against whom he makes no factual allegations.  The only mention of Walker in the complaint is in relation to claim seven, wherein he states Walker brought him a dinner tray.  The court cannot envision any possible claim plaintiff could have against Walker for doing as he had requested in bringing a tray to plaintiff's cell.  Similarly, plaintiff fails to allege any facts as to Arnold.  The court notes Arnold is named as the warden of CSP-Solano.

To the extent plaintiff's intention is to include Warden Arnold simply due to his official position, that is insufficient.  Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct

because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act.  See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."  Iqbal, 129 S.Ct. at 1948.

It therefore appears plaintiff has no claim against either Walker or Arnold, who should both be dismissed from this action.

A.      Harassment

Plaintiff's main claim appears to be that defendants Martinez and Winsaver have harassed him in several ways.  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.  Allegations of verbal harassment do not state a claim under the Eighth Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner] psychological damage."  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d

4

1318 (9th Cir. 1998).  In addition, the prisoner must show that the verbal comments were

unusually gross, even for a prison setting, and that he was in fact psychologically damaged as a

result of the comments.  See Keenan, 83 F.3d at 1092.  Allegations of threats and harassment do

not state a cognizable claim under 42 U.S.C. § 1983.  See id. (assaultive comments by prison

guard not enough to implicate Eighth Amendment); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.

1987) (mere threat does not constitute constitutional wrong).  See Anderson v. County of Kern,

45 F.3d 1310 (9th Cir. 1995) (temporary unconstitutional conditions of confinement do not rise

to the level of constitutional violations).

Therefore, plaintiff's claims of harassment, including not being allowed out of his

cell (claim 1), denying him use of the phone (claim 2), refusal to allow plaintiff access to the

library (claim 5), refusal to allow plaintiff outside (claim 6), refusal to bring him dinner (claim

7), and teasing him (claim 8) are all insufficient.  To the extent some of these claim involved

possible violation of other rights, those are discussed below.  However, none of plaintiff's

harassment claims are sufficient, nor does it appear any amendment will cure the defects.  As

such, plaintiff will not be provided leave to amend this claim.

B.      Court Access

Plaintiff alleges in several of his claims that he is being denied access to the court.

More specifically, he claims defendants Martinez and Winsaver have refused to allow him access

to the law library (claims 1, 5), a phone call to his lawyer (claim 2), and accepting legal mail

(claim 3).

Prisoners have a First Amendment right of access to the courts.  See Lewis v.

Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall,

64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance

procedures).  This right includes petitioning the government through the prison grievance

process.  See id.  Prison officials are required to "assist inmates in the preparation and filing of

meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance

from persons trained in the law." <u>Bounds</u>, 430 U.S. at 828.  The right of access to the courts,
however, only requires that prisoners have the capability of bringing challenges to sentences or
conditions of confinement.  <u>See</u> <u>Lewis</u>, 518 U.S. at 356-57.  Moreover, the right is limited to
non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits.  <u>See</u> <u>id.</u> at 353 n.3 &
354-55.  Therefore, the right of access to the courts is only a right to present these kinds of claims
to the court, and not a right to discover claims or to litigate them effectively once filed.  <u>See</u> <u>id.</u> at
354-55.

      As a jurisdictional requirement flowing from the standing doctrine, the prisoner
must allege an actual injury.  <u>See</u> <u>id.</u> at 349.  "Actual injury" is prejudice with respect to
contemplated or existing litigation, such as the inability to meet a filing deadline or present a
non-frivolous claim.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Phillips v. Hust</u>, 477 F.3d 1070, 1075 (9th Cir. 2007).
Delays in providing legal materials or assistance which result in prejudice are "not of
constitutional significance" if the delay is reasonably related to legitimate penological purposes.
<u>Lewis</u>, 518 U.S. at 362.

      Here, plaintiff fails to provide sufficient information for the court to evaluate this
claim.  It is unclear how denial of access to the library, one phone call, or failure to accept mail
have actually interfered with his First Amendment right.  In addition, plaintiff fails to allege any
actual injury resulting from such allegations.  Thus, as set forth in his complaint, plaintiff fails to
state a claim for denial of access to the court.  This claim is subject to amendment, as it is
possible for plaintiff to plead sufficient facts to cure these defects.

      C.    <u>Grievance</u>

      To the extent plaintiff's claim relates to the inmate grievance process, prisoners
generally have no stand-alone due process rights related to the administrative grievance process.
<u>See</u> <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988); <u>see also</u> <u>Ramirez v. Galaza</u>, 334 F.3d
850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific
grievance process).  Because there is no right to any particular grievance process, it is impossible

for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion.  See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).  Prisoners do retain a First Amendment right to petition the government through the prison grievance process.  See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

Plaintiff appears to allege in claims three and five that he attempted to submit inmate grievances to both Martinez and Winsaver, who refused to respond.  These allegations are unclear, as plaintiff simply states the defendants failed to respond to the grievances while also alleging other harassment.  To the extent plaintiff actually attempted to initiate a grievance following the proper procedure, and the grievances were destroyed or the defendants attempted to interfere with plaintiff's ability to grieve a perceived wrong, he may be able to state a claim for violation of his First Amendment rights, as discussed above.  To the extent he is unsatisfied with the results of his inmate grievances, however, he is unable to state a claim for violation of any rights.  As plead, this claim is insufficiently vague for the court to determine whether there was a potential violation of his rights.  Plaintiff will be provided an opportunity to amend this claim.

/ / /

/ / /

/ / /

D.    Safety

In claim four, plaintiff appears to be attempting to state a claim for failure to protect, in violation of his Eighth Amendment rights.  The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met:  (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison

officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

Plaintiff claims defendants Martinez and Winsaver attempted to have plaintiff attacked by other inmates.  His allegation, however, fails to meet the standards set forth above. By telling other inmates it was plaintiff's fault there were restrictions on telephone use, it would appear to be more of a harassment type of situation rather than an actual attempt to place plaintiff at substantial risk of harm.  In fact, the allegations fail to allege any attempt at violence toward plaintiff, but that the inmates approached him and questioned whether it was true.  It is unclear to the court whether there was an actual substantial risk of harm to plaintiff, or even a risk of threat, nor is it clear whether the risk of danger was more than a mere suspicion.  In order for plaintiff to be able to state a claim for violation of his Eighth Amendment rights, he must show he was at risk from actual physical abuse, not simply a threat of harm.

### E.    Retaliation

Finally, plaintiff also appears to be attempting to state a claim for retaliation.  In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v.

Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Here, plaintiff appears to allege defendant Martinez retaliated against him for plaintiff threatening to file an inmate grievance against Martinez by issuing plaintiff a 128 disciplinary action. This claim is unclear. According to the allegations in the complaint, it appears that plaintiff was attempting to call his lawyer when defendant Martinez saw him. Defendant Martinez told plaintiff he could not call his lawyer at that time, and he was supposed to report to work. Plaintiff stated to Martinez that would be filing a 602 inmate grievance against Martinez for Martinez not allowing plaintiff to use the phone. As a result, defendant Martinez issued plaintiff a 128 disciplinary. It is unclear what constitutional right plaintiff was exercising, and how his First Amendment rights were chilled. This claim is subject to cure, so plaintiff will

be provided an opportunity to amend this claim.

## III.   MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff also seeks the appointment of counsel.  The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  See Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  See Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).   A finding of "exceptional circumstances" requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims on his own in light of the complexity of the legal issues involved.  See Terrell, 935 F.2d at 1017.  Neither factor is dispositive and both must be viewed together before reaching a decision.  See id.

In the present case, the court does not at this time find the required exceptional circumstances.  This case involves allegations for violation of plaintiff's First Amendment rights by denying him access to the courts, his Eighth Amendment rights to be safe, and retaliation.  These claims are fairly straightforward and do not appear to be particularly complex, either legally or factually. Plaintiff has demonstrated sufficient ability to articulate his claim. Although he claims mental health issues, and that he has obtained the assistance of jailhouse lawyers, he also indicates in his complaint that he has been working as a tutor.  There is some inconsistency with his claim that he cannot proceed due to his mental health, while also working with other inmates as a tutor.  The documentation attached to his motion indicate a recent diagnosis of mood disorder NOS, which does not necessarily render plaintiff incapable of articulating his claims.  While his current complaint is insufficient, it does not appear to be due to an inability to articulate his claim.  In addition, at this early stage of the proceedings, especially in light of the above discussion, the undersigned cannot say that plaintiff is likely to prevail in this lawsuit.  If plaintiff successfully files an amended complaint which states a claim, he may be able to renew

11

his request for appointment of counsel.  However, until such time, the undersigned does not find the required circumstances for appointment of counsel at this stage of the proceedings.

### IV.  CONCLUSION

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because some of the defects identified in this order cannot be cured by amendment, plaintiff is not entitled to leave to amend as to such claims.  Plaintiff, therefore, now has the following choices: (1) plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the court will address the remaining claims; or (2) plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders

and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's complaint is dismissed with leave to amend;

2.      Plaintiff shall file an amended complaint within 30 days of the date of service of this order; and

3.      Plaintiff's motion for appointment of counsel (Doc. 6) is denied.


DATED:  September 30, 2016

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE